IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAYNE OLIN REVEL JR., ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> DAVID PIERCE, Warden, ) <br> and JOSEPH R. BIDEN, III, ) <br> Attorney General of the State ) <br> of Delaware, ) <br> ) <br> Respondents.[1] ) | Civ. No. 11-800-SLR |

Wayne Olin Revel, Jr. Pro se petitioner.

Maria T. Knoll. Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

September 3, 2014
Wilmington, Delaware

---

[1]Warden David Pierce is substituted for former Warden Perry Phelps, an original party to the case. See Fed. R. Civ. P. 25(d).

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Wayne Olin Revel Jr. ("petitioner") has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 3) Petitioner is an inmate in custody at the James T. Vaughn Correctional Center in Wilmington, Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As summarized by the Delaware Supreme Court in petitioner's direct appeal:

> On September 19, 2006, a Wilmington Trust branch in Kent County, Delaware, was robbed of approximately $2,300. On September 22, 2006, a Citizens Bank branch office located in Bear, Delaware was robbed of between $700 and $800. Three days later, a PNC Bank branch in Talleyville, Delaware was nearly robbed. Surveillance footage of each incident revealed the robber to be a white male, wearing slightly oversized clothing, tan boots, and a white baseball cap with a raised white symbol. During each robbery, the robber – who did not wear gloves – handed the bank teller a note that read: "Give me all the money and no dye packs."
>
> Detective David Spicer sent a photograph of the robber, taken by surveillance cameras at the Wilmington Trust branch, to various news agencies throughout Delaware. After receiving a telephone call that identified the person in the surveillance photograph as Brock Charles ("Charles"), Spicer compiled a six-person photo lineup that included a photograph of Charles. Spicer then showed the photo lineup to the bank tellers who witnessed the Wilmington Trust Bank robbery. Two tellers who had not been specifically approached by the robber picked out Charles' photograph. Lori Erhart ("Erhart"), the teller who was confronted by the robber, also ultimately identified Charles as the offender. The police then obtained an arrest warrant for Charles, who denied any participation in the robberies. After Charles' employer and coworkers confirmed that he had been at work during the Wilmington Trust robbery, the State dropped the charges against him.
>
> A similar photo lineup was shown to Abby Manuel ("Manuel"), a teller present at the Citizens Bank robbery. The man she selected from the photo was William Pruitt ("Pruitt"). The police soon obtained a warrant for Pruitt's arrest and went to his residence. Pruitt's mother and her boyfriend confirmed that the man in the surveillance photograph appeared to be Pruitt. At Pruitt's home, the police found a pair of Timberland boots, oversized jeans, and a white hat with a raised

white emblem. Pruitt was arrested, but the charges against him were also later dropped because he provided a partial alibi that accounted for his whereabouts during one of the bank robberies.

After the public news agency WBOC aired the surveillance photograph on television, Kerry Bittenbender ("Bittenbender") contacted the police and informed them that he believed that the man in the picture was [petitioner]. After Dover police Detective David Spicer – who was investigating the September 19, 2006 Kent County bank robbery at Wilmington Trust – received the name of [petitioner] as a potential suspect, he contacted Delaware State Police Detective Mark A. Papili, the Detective who was investigating the September 22, 2006, Citizens Bank robbery and the September 25, 2006 PNC attempted robbery. Comparing their information, the two police officers determined that [petitioner] was the common bank robbery suspect in both police agency investigations.

The Delaware State police stopped [petitioner's] 1993 black Isuzu Rodeo motor vehicle on October 8, 2006, in New Castle County. Although [petitioner] was not employed, the police discovered $1,136 cash in his pants pocket. An October 10, 2006 search of [petitioner's] vehicle pursuant to a search warrant revealed a white on white baseball hat in the rear seat and a pair of tan work boots on the right front passenger floorboard.

At trial, Erhart (the Wilmington Trust teller), Manuel (the Citizens Bank teller), and Nicole Beers (a PNC Bank teller) were unable positively to identify [petitioner] as the robber. During her trial testimony, Manuel maintained that she had correctly identified Pruitt as the person who had robbed the Citizens Bank. Consequently, the State's case focused on the white hat and the substantial amount of cash found on [petitioner's] person. Each of the tellers testified that the hat found in [petitioner's] car looked just like the one worn by the robber.

*Revel v. State*, 956 A.2d 23, 25-27 (Del. 2008).

In January 2008, a Delaware Superior Court jury convicted petitioner of two counts of second degree robbery and one count of attempted second degree robbery. *See Revel v. State*, 9 A.3d 476 (Table), 2010 WL 4812796, at *1 (Del. Nov. 24, 2010). The Superior Court sentenced petitioner in February 2008 as an habitual offender to a total of fifteen years of incarceration, suspended to probation after serving twelve years.

*Id.* The Delaware Supreme Court affirmed petitioner's convictions on direct appeal. *See Revel v. State*, 956 A.2d at 30.

In September 2008, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") alleging, *inter alia*, the ineffective assistance of trial and appellate counsel. *See Revel*, 2010 WL 4812796 at *1. The Superior Court denied the Rule 61 motion as meritless in July 2010, and the Delaware Supreme Court affirmed that decision on November 24, 2010. *Id.*

Petitioner timely filed a § 2254 application in this court. (D.I. 3) The State filed an answer, arguing that the court should deny the application for failing to satisfy § 2254(d). (D.I. 23)

## III. STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C.

§ 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner's application asserts the following two grounds for relief: (1) the trial court erred by failing to declare a mistrial when a police detective commented at trial on petitioner's Fifth Amendment right to remain silent; and (2) defense counsel provided ineffective assistance by failing to call a key alibi witness to testify at trial and also by failing to properly cross-examine key witnesses for the prosecution. The Delaware Supreme Court denied both claims as meritless (claim one was denied on direct appeal

4

and claim two was denied on post-conviction appeal). Therefore, habeas relief will only be available if the Delaware Supreme Court's decisions were contrary to, or involved an unreasonable application of, clearly established federal law. The court will discuss the claims in seriatim.

## A. Claim One: Witness Comment on Petitioner's Right to Remain Silent

Near the end of defense counsel's cross-examination of Detective Papili, counsel asked if the detective had requested petitioner to provide a writing sample. Detective Papili responded by saying, "Not that I am aware of. Detective Potts informed me that he declined to make a statement and asked for an attorney, so there was no other – we wouldn't ask him for that sample of anything or any kind like that. We would do a search warrant." *Revel*, 956 A.2d at 26. Defense counsel immediately moved for a mistrial, which the trial court denied. However, after a side-bar discussion with both defense counsel and the prosecutor, the trial court gave the following jury instruction:

> As you may know, [petitioner], like any other accused person in the United States, has the absolute right to remain silent and to have a lawyer present. In fact, he is specifically told that by the police. So of course, absolutely no inference of any kind can be drawn by you concerning [petitioner's] failure to make a statement at any time in this entire proceeding.

*Id.* at 27.

In claim one, petitioner asserts that Detective Papili's reference to petitioner's refusal to provide a police statement and his related request for an attorney constituted an impermissible comment on petitioner's Fifth Amendment right to silence. As a result, petitioner contends that the trial court's failure to declare a mistrial after Detective Papili's comment violated his right to a fair trial. The court construes petitioner's

5

argument to be that the trial court's failure to declare a mistrial violated his right to due process.

Pursuant to Supreme Court precedent, trial judges have broad discretion in deciding whether to grant a mistrial, and "may declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a 'manifest necessity' for doing so, [] but the power ought to be with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Renico v. Lett*, 559 U.S. 766, 773-74 (2010). There are no hard and fast rules regarding what conditions constitute a "manifest necessity" requiring a mistrial; rather, the determination must be based on the particular facts and circumstances of the case. *Russo v. Superior Ct. of New Jersey*, 483 F.2d 7, 13 (3d Cir. 1973); *Crawford v. Fenton*, 646 F.2d 810, 817 (3d Cir. 1981).

In Delaware, "a mistrial is warranted only when there is a manifest necessity or the ends of justice would be otherwise defeated, and there are no meaningful and practical alternatives to that remedy." *See Dawson v. State*, 637 A.2d 57, 62 (Del. 1994)(citing cases). Here, the Delaware Supreme Court applied Delaware's abuse of discretion standard when it reviewed the trial court's denial of petitioner's motion for a mistrial. *See Revel*, 956 A.2d at 28-30. However, because this standard mirrors the standard articulated in *Renico*, the court concludes that the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

As for the court's inquiry under the "unreasonable application" prong of

6

§ 2254(d)(1), on habeas review

> [the] question is not whether the trial judge should have declared a mistrial. It is not even whether it was abuse of discretion for her to have done so . . . The question under AEDPA instead is whether the determination of the [state court] that there was no abuse of discretion was an "unreasonable application of . . . clearly established law."

*Renico*, 559 U.S. at 772-72. An improper witness statement only rises to the level of a due process violation if, when viewed in the context of the entire trial, the statement is of sufficient significance so as to deny the petitioner of a fair trial because it prevented the jury from arriving at a fair and impartial verdict. *See Greer v. Miller*, 483 U.S. 756, 765 (1987)(applied in the context of prosecutorial misconduct); *Arizona v. Washington*, 434 U.S. 497, 511-12 (1978). The Third Circuit has identified three factors for a reviewing court to consider when determining if a trial court abused its discretion in denying a mistrial: (1) whether the witness' remarks were pronounced and persistent, creating a likelihood of misleading and prejudicing the jury; (2) the strength of the other evidence; and (3) the curative action taken by the court. *United States v. Xavier*, 2 F.3d 1281, 1285 (3d Cir. 1993). Delaware trial courts consider similar factors when determining whether a witness' statement has prejudiced the defendant such that a mistrial is warranted: (1) the nature, persistency, and frequency of the emotional display; (2) whether the outburst created a likelihood that the jury would be misled or prejudiced; (3) the closeness of the case; and (4) the curative or mitigating action taken by the trial judge. *See Pena v. State*, 856 A.2d 548, 550-51 (Del. 2004); *Taylor v. State*, 690 A.2d 933, 935 (Del. 1997).

After reviewing Detective Papili's reference to petitioner's exercising his right to remain silent within the aforementioned framework, the court concludes that the

7

Delaware Supreme Court's decision does not warrant habeas relief. As an initial matter, given petitioner's failure to provide clear and convincing evidence to the contrary, the court accepts as correct the Delaware Supreme Court's factual finding that Detective Papili's brief one-sentence reference to petitioner's exercising his right to remain silent was inadvertent in nature and made as part of an explanation for the police officers' failure to ask petitioner to provide a writing sample. *See Revel*, 956 A.2d at 28-29. In turn, Detective Papili's extremely brief and inadvertent statement about petitioner's exercise of his right to remain silent was unlikely to mislead the jury or result in substantial prejudice. The case also was not close and the evidence against petitioner was strong. For instance, the jury was presented with three bank surveillance photographs of the robber and the jurors were able to compare those photos of the robber's face with petitioner's physical appearance as he was seated before them in the courtroom. The jury had the surveillance film of the robberies to compare against petitioner's physical appearance. During the trial, the State demonstrated that the distinctive clothing worn by the bank robber during the incidents matched the apparel the police recovered from petitioner's motor vehicle and, even though petitioner was unemployed, he had over $1100 cash in his pockets when arrested shortly after the last bank robbery attempt. *See Revel*, 956 A.2d at 30. Finally, the trial court's prompt, clear and forceful curative instruction adequately addressed defense counsel's concern about Detective Papili's reference without putting undue emphasis upon the subject. Notably, the Delaware Supreme Court's determination that the trial judge's curative instruction was sufficient to cure any potential for prejudice resulting from Detective Papili's fleeting comment is consistent with Supreme Court precedent that juries are presumed to follow

the instructions given by the trial court. See *Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987)(collecting cases where the Supreme Court has presumed that a jury would follow its instructions to disregard evidence or use evidence for a limited purpose).

In short, after reviewing petitioner's allegation in context with all of the aforementioned circumstances, the court concludes that the Delaware Supreme Court reasonably applied clearly established federal law in holding that the trial court did not abuse its discretion in denying petitioner's motion for a mistrial. Accordingly, the court will deny claim one for failing to satisfy § 2254(d).

### B. Claim Two: Ineffective Assistance of Counsel

Next, petitioner contends that counsel provided ineffective assistance by failing to investigate his explanation about the cash found on his person, by failing to call an alibi witness to testify at trial, and by failing to effectively cross-examine key witnesses for the prosecution. The clearly established law governing the instant ineffective assistance of counsel claim is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. See *Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

9

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court applied the *Strickland* standard when it affirmed the Superior Court's denial of claim two. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406.

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of claim two as meritless involved a reasonable application of *Strickland*. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *Harrington*, 131 S.Ct. at 788. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 1. Failure to call alibi witness to testify and adequately investigate petitioner's explanation about cash found on his person

Petitioner contends that counsel erred by failing to call alibi witness Angie Hindt to testify at trial. According to petitioner, Ms. Hindt would have testified that she was with petitioner at the time of the Wilmington Trust robbery, first test driving and

10

purchasing a car and then renting a hotel room and going to a bar. Petitioner also contends that counsel failed to adequately investigate petitioner's assertion that the $1100 cash found in petitioner's pocket at the time of his arrest was payment from his employer, a company named Freedom Builders.

When the Superior Court denied claim two, it opined that "counsel did a superb job of investigating the case against [petitioner] and preparing for and presenting evidence during trial. I find counsel represented [petitioner] effectively and that [petitioner] has not demonstrated any prejudice as a result of said representation." *State v. Revel*, ID No. 0610006478, Comm'r Rep. & Rec., at 15 (Del. Super. Ct. June 14, 2010). After noting that it "was not a close case" and that the evidence against petitioner was strong, the Delaware Supreme Court affirmed the Superior Court's decision, opining that, even if counsel's actions constituted error, petitioner was not prejudiced. *See Revel*, 2010 WL 4812796, at *2.

The court has independently reviewed the record and finds the following information particularly relevant for its § 2254(d) inquiry. The exhibits for defense counsel's Rule 61 affidavit include emails between counsel and the investigator who helped investigate the facts of petitioner's case. These emails reveal that: (1) defense counsel investigated, but could not find, the company named Freedom Builders petitioner stated was his employer and source of the $1100; (2) petitioner was unable to provide any paystubs from his job; and (3) petitioner subsequently admitted that he did not start working for Freedom Builders until after the robberies. (D.I. 25, State's Motion to Affirm in *Revel v. State*, No.517, 2010, at Exh. 20 – Exh. 37)

11

Further, in his Rule 61 affidavit, defense counsel explains that Ms. Hindt refused to testify at petitioner's trial, and that petitioner knew about her refusal well in advance of his trial. The email exhibits demonstrate that Ms. Hindt initially stated her willingness to testify in January 2007, and then failed to return the investigator's phone calls throughout the spring of 2007 until she finally stated in May 2007 that she would rather not be involved in the matter. (D.I. 25, State's Motion to Affirm in *Revel v. State*, No.517, 2010, at Exh. 20 – Exh. 25) Then, in September 2007, Ms. Hindt indicated she would review a videotape to determine if petitioner was the person depicted on it. (D.I. 25, State's Motion to Affirm in *Revel v. State*, No.517, 2010, at Exh. 29) The emails also indicates that Ms. Hindt was served a subpoena. *Id*. However, according to counsel's October 16, 2007 "Memo to File," he met with Ms. Hindt for over three hours in October 2007 to determine if she should be called to testify. (D.I. 25, State's Motion to Affirm in *Revel v. State*, No.517, 2010, at Exh. 30) The Memo explains how, once defense counsel showed Ms. Hindt the surveillance photos and photos of the hat that was seized from petitioner's car, Ms. Hindt realized she could not testify "since if she admits the hat seized from [petitioner's motor vehicle] appears to be the same as the hat in the photos and DVDs, that testimony would help convict [petitioner.]" (D.I. 25, State's Motion to Affirm in *Revel v. State*, No.517, 2010, at Exh. 30) The Memo also explains how the dates she and petitioner stayed in the hotel in Dover were not the same dates of the robberies charged in petitioner's re-indictment, and that Ms. Hindt indicated she would not lie for petitioner. *Id*.

It is well-settled that an otherwise reasonable decision by counsel not to call certain witnesses is not ineffective simply because it differed from the defendant's

12

wishes. *See, e.g., Diggs v. Owens*, 833 F.2d 439, 445-46 (3d Cir. 1987). Based on the foregoing record, and viewing the Delaware Supreme Court's decision through a doubly deferential lens, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in rejecting petitioner's argument that defense counsel rendered ineffective assistance with respect to counsel's witness preparation, investigation of the source of the $1100 in cash, and decision not to call Ms. Hindt as an alibi witness during trial. Notably, the record clearly shows that petitioner himself admitted he was not employed by Freedom Builders on the dates of the robberies and thatMs. Hindt would not have been able to provide an alibi for petitioner for the dates of the robberies for which he was convicted. Accordingly, the court will deny this subargument of claim two for failing to satisfy § 2254(d).

### 2. Cross-examination of witnesses

Petitioner also contends that counsel erred by not cross-examining his probation officer, Kerry Bittenbender, who, after seeing surveillance footage of the crime on television, thought the perpetrator looked like petitioner and contacted the police. According to petitioner, counsel should have cross-examined Bittenbender to point out that the bank tellers identified somebody else after looking at the photographs and that Bittenbender was the only person who positively identified petitioner as the person depicted in the photos. (D.I. 12 at 21) Petitioner also asserts that counsel should have cross-examined Bittenbender about petitioner's employment situation to demonstrate that the money found on his person was payment for working. *Id.*

An attorney's decision regarding the cross-examination of witnesses is strategic in nature and will not constitute the basis for ineffective assistance if such decisions are

13

reasonably made. *See Diggs*, 833 F.2d at 444-45. In his Rule 61 affidavit, defense counsel explains that the State did not mention petitioner was on probation or that Bittenbender was his probation officer, and counsel believed cross-examining Bittenbender could have opened the door to petitioner's extensive criminal record on re-direct examination. Moreover, in this proceeding, petitioner does not describe definitive beneficial testimony that could have been obtained by cross-examining Bittenbender and, given petitioner's own concession to defense counsel that he was not employed by Freedom Builders on the relevant dates and his failure to provide the name of another possible employer for those dates, the court questions if Bittenbener could have provided any helpful information regarding petitioner's employment status. (D.I. 25, State's Motion to Affirm in *Revel v. State*, No.517, 2010, at Exh. 37-1) Weighing the apparent absence of beneficial testimony Bittenbender could have provided for the defense against the very real possibility that cross-examining Bittenbender would have revealed damaging information about petitioner's criminal past, the court concludes that petitioner has not overcome the strong presumption that counsel's decision was "sound trial strategy." *See Strickland*, 466 U.S. at 689.

Finally, petitioner asserts that counsel's cross-examination of Detective Potts prejudiced his case because it elicited testimony about the information contained in the police report that matched petitioner's description to the description provided by another witness. (D.I. 12 at 23) The Superior Court rejected these assertions as meritless because "much beneficial evidence was elicited during cross examination of Detective Potts concerning the police report that [petitioner] is now taking offense to." *Revel*, ID No. 0610006478, Comm'r Rep. & Rec. at 14. After reviewing the trial transcript, the

14

court concludes that the Superior Court reasonably determined the facts in light of the evidence presented by the parties and that the Delaware Supreme Court reasonably applied *Strickland* in affirming the Superior Court's decision. (D.I. 25, App. to Appellant's Op. Br. in *Revel v. State*, No.517, 2010 at A-295 to A-302) For instance, during defense counsel's cross-examination, Detective Potts stated that the police did not discover any contraband in petitioner's car that was associated with any of the crimes. In addition, defense counsel's questions to Detective Potts about loan paperwork found in the car raised the possibility that petitioner used the money from the loan to pay the car insurance, which contradicted the State's implicit suggestion that petitioner used money obtained from the bank robberies to pay his car insurance. (D.I. 25, App. to Appellant's Op. Br. in *Revel v. State*, No.517, 2010 at A-295 to A-302, A-351) Given these circumstances, the court concludes that the instant sub-argument of claim two also does not warrant habeas relief.

Accordingly, the court will deny claim two in its entirety for failing to satisfy § 2254(d).

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

15

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI.     CONCLUSION

For the foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.